**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM R. ROBINSON, JR.

                      Plaintiff,

  v.                                              No. 04-CV-993
                                                    (FJS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CONBOY, McKAY, BACHMAN & KENDALL, LLP<br>Attorney for Plaintiff<br>307 State Street<br>Carthage, New York 13619 | LAWRENCE D. HASSELER, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>  Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff William R. Robinson, Jr. ("Robinson"), brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Robinson moves for a finding of disability and the Commissioner cross-moves for a

---

     [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings. Docket Nos. 6, 9. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I.  Procedural History

On June 20, 2003, Robinson filed an application for supplemental security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 39-42.[2] On July 25, 2003, the application was denied. T. 20-24. Robinson requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas Kennedy on April 14, 2004. T. 165-94. In a decision dated May 21, 2004, the ALJ held that Robinson was not entitled to disability benefits. T. 10-19. On June 21, 2004, Robinson filed a request for review with the Appeals Council. T. 8-9. The Appeals Council denied Robinson's request for review on August 12, 2004, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II.  Contentions

Robinson contends that the ALJ erred by failing properly to evaluate his credibility, and failing to afford controlling weight to his treating physician's opinion. He also contends that the ALJ's residual functional capacity (RFC) determination and conclusion that he was not disabled are not supported by substantial evidence. The Commissioner contends that there was substantial evidence to support the determination that Robinson was not disabled.

---

[2]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 5.

2

### III.  Facts

Robinson, now forty-five years old, worked through a social services workfare program as a laborer at a recycling facility.  T. 168, 171.  He previously worked as a janitor and a stock clerk.  T. 79.  Robinson completed the eleventh grade and obtained a GED. T. 170.  Robinson alleges that he became disabled on January 1, 2001 due to low back pain, learning disabilities, and attention-deficit/hyperactivity disorder ("ADHD").  T. 54.

### IV.  Standard of Review

#### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he [or she] is not, the

3

> [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A.  Medical Evidence

Robinson alleges that his disability began on January 1, 2001 due to low back pain, learning disabilities, and ADHD.  T. 54.  Robinson also alleges that he experiences pain in his shoulder.  T. 174.

#### 1.  Physical

From July 1999 to March 2004, Robinson treated for low back pain with Drs. Paul S. Curtis and Douglas Sloan, and others at Dr. Curtis' office.  T. 125-26.  In July 1999, he was diagnosed by Dr. Curtis as suffering from chronic low back pain and "[s]ix lumbar type vertebrae with lumbarization of the [first] sacral segment, vestigal disc space at S1/2 and evidence of probable spondylolysis of the pars of the lumbarized [first] sacral segment."[3]

---

[3] Lumbarization is a condition in which the first segment of the sacrum is not fused with the second, so that there is one additional articulated vertebra and the sacrum

5

T. 126. Thereafter, Robinson returned generally on a three-month basis with continuing complaints of low back pain. T. 102-24, 152-57. During this time he was prescribed various medications, including Darvocet, Ibuprofen, Mobic, Neurontin, Relafen, and Vioxx.[4] T. 103, 113, 121, 126.

On March 5, 2004, Dr. Sloan completed a medical report for employability. T. 152-53. Dr. Sloan noted that Robinson's diagnoses included spondylolysis lumbar - congenital, and intervertebral disc degeneration - thoracic. T. 152. Moreover, Robinson's prognosis was "guarded" but he was capable of working full time with limitations at a "moderate disability level." T. 152. Dr. Sloan indicated that Robinson could lift, carry, push, or pull a maximum of ten-to-twenty pounds; walk, stand, stoop, bend, sit, and travel by bus with "some limitation"; but should avoid climbing. Id.

From May 2003 to March 2004, Robinson sought treatment for neck and right shoulder pain from Drs. Michael C. Wainberg and David Van Eenenaam of North Country Orthopaedic Group, P.C. T. 136-37, 144-51. He was diagnosed with right shoulder tendonitis and mild carpal tunnel syndrome. T. 137, 150-51. In July, August, and November 2003, he received trigger point injections. T. 144-46, 148. On December 4, 2003, Dr. Van Eenenaam noted that he discussed the possibility of performing shoulder surgery. T. 148. He also noted that Robinson's carpal tunnel syndrome was "under

---

consists of only four segments. Dorland's Illustrated Medical Dictionary 1069 (30th ed. 2003). Spondylolysis is dissolution of a vertebra. Id. at 1743.

[4] Relafen, Mobic, and Vioxx are anti-inflammatory drugs. Physicians' Desk Reference 1604, 1006, 2172 (59th ed. 2005). Darvocet and Ibuprofen are pain relieving drugs. Id. at 402, 1934-35. Neurontin, an anti-seizure medication, is also indicated for the management of postherpetic neuralgia in adults. Id. at 2589-90.

control by wearing [a] splint." Id. On March 26, 2004, Dr. Wainberg noted that Robinson still wished to proceed with shoulder surgery, as he continued to have right shoulder pain. T. 148-49. Dr. Wainberg also noted that he would give Robinson an "'off work' slip" until he saw Dr. Van Eenenaam, who would be providing Robinson's ongoing care. T. 149.

The record also contains a physical RFC assessment completed by "A. Bedell" on July 25, 2003, which indicated that Robinson could lift and carry fifty pounds occasionally; lift and carry twenty-five pounds frequently; and stand and walk, or sit, for six hours in an eight-hour workday. T. 139-43.

### 2.  Mental

Robinson also alleges disability due to learning disabilities and ADHD. T. 54. On June 18, 2003, John A. Tinsley, Ed.D. conducted a psycho-educational evaluation.[5] T. 128-30. The results of the examination showed that Robinson was of "average" intelligence. T. 129-30. It was found, however, that Robinson presented "significant deficits" in academic abilities with grade equivalents of 4.1 in spelling and 3.8 in written expression. T. 130.

### B.  Credibility

Robinson contends that the ALJ's decision not to credit fully his subjective complaints of disabling pain was error. The Commissioner contends that the ALJ properly

---

[5] Robinson was referred for evaluation by the Career Connections Department of Social Services Program of Jefferson Rehabilitation Center. T. 128. The last page of this evaluation was not included in the record. See T. 128-30.

7

considered Robinson's symptoms.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained." 20 C.F.R. §§ 404.1529, 416.929 (2007); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. §§ 404.1529, 416.929; Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999). If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

(i) [The claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2007).

Here, the ALJ concluded that Robinson's "allegations regarding his limitations are not totally credible." T. 18. The ALJ found specifically that "treatment has been conservative and clinical findings are unremarkable apart from tenderness and slightly diminished range of motion of the lumbosacral spine." T. 17. In so finding, he noted that Robinson's low back pain was controlled to some extent by an exercise program and anti-inflammatories. T. 14. The ALJ also noted that Robinson's shoulder pain was relieved in part by trigger point injections. T. 15-16. The ALJ also discussed Robinson's intention to proceed with shoulder surgery, but Robinson's counsel was unable to verify that Robinson's next appointment with Dr. Van Eenenaam was for the purpose of scheduling surgery. T. 16.

The ALJ also noted that Robinson reported increased discomfort with stooping, bending, lifting, and prolonged sitting/standing; mild discomfort in changing positions; and increased pain with right shoulder elevation. T. 14, 15. He also noted, however, that

9

Robinson reported that "occasional periods of altered sensation in the legs are 'usually brief and resolved with changing position.'" T. 16.

The ALJ further reviewed Robinson's medications, which included anti-inflammatories and pain relievers. T. 14-15. The ALJ found it significant that a progress note indicated that Robinson reportedly stopped taking medication in December 2003 and January 2004. T. 16, 156. Further, the ALJ considered the fact that Robinson "worked rather steadily since the alleged onset date" and that Robinson testified to mowing his yard and performing housework. T. 17.

The foregoing demonstrates that there is substantial evidence to support the ALJ's conclusion that Robinson's subjective complaints of pain were not fully credible. Accordingly, it is recommended that the Commissioner's determination on this ground be affirmed.

### C. Treating Physician's Rule

Robinson contends that the ALJ erred by failing to afford controlling weight to the opinion of his treating physician.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2),

10

416.927(d)(2) (2007); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell, 177 F.3d at 134.  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2007).

Here, Robinson contends that the ALJ erred by failing to afford controlling weight to the opinion of his treating physician, Dr. Curtis, who he claims "expressly noted" a need for "frequent, irregular, and unpredictable breaks" in a March 12, 2003 progress note.  Pl. Mem. of Law (Docket No. 6) at 7-9.  Dr. Curtis stated in the "History" portion of the note that Robinson "continues to work with restriction per [Department of Social Services ("DSS")].  He is working at a recycling location.  He has a 25 [pound] weight restriction for lifting and standing, sitting with frequent breaks, change in position frequently."[6]  T. 104.  Dr. Curtis then concluded in the "Plan" portion of the note that Robinson "will continue to

---

[6] The progress note was also signed by Edward G. Wolfe, Jr., registered physician's assistant.  T. 104.

11

work with his restrictions in place." Id. Defendant contends that the former statement does not constitute a medical opinion but "merely recounts . . . medical history." Def. Mem. of Law (Docket No. 9) at 7-8. He also claims that the latter statement does not constitute a medical opinion and was "merely an acknowledgment that plaintiff could continue to perform his job." Id. at 8.

Contrary to Robinson's assertion, the progress note does not show that Dr. Curtis "expressly noted" a need for "frequent, irregular, and unpredictable breaks." See T. 104. Moreover, regarding the restrictions mentioned in the "History" portion of the note, these were established "per DSS." T. 104. Dr. Curtis simply described these restrictions while reviewing Robinson's medical history. Id. Thus, this history review did not constitute a medical opinion since Dr. Curtis did not judge the nature and severity of Robinson's impairments. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . ."). Therefore, the ALJ did not err by not affording controlling weight to Dr. Curtis's description of the DSS's restrictions because it was not a medical opinion.

Regarding Dr. Curtis's statement in the "Plan" portion of the note that Robinson "will continue to work with his restrictions in place," Dr. Curtis simply noted that Robinson would continue to work under the current restrictions, which were established by the DSS. Dr. Curtis made no judgment about the nature and severity of Robinson's impairments. Thus, this statement also was not a medical opinion. See 20 C.F.R. § 416.927(a)(2). Accordingly, the ALJ did not err by not affording controlling weight to this statement because it was not a medical opinion. Therefore, it is recommended that the

12

Commissioner's determination in this regard be affirmed.

### D.  RFC

Robinson contends that the ALJ's RFC determination and conclusion that he was not disabled are not supported by substantial evidence.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone, 70 F. Supp. 2d at 150; see 20 C.F.R. §§ 404.1545, 416.945 (2007).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960 (2007).

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry, 209 F.3d at 122; 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a) (2007).  The ALJ may apply the grids or consult a vocational expert.  See Heckler v.

Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2007). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Pratts, 94 F.3d at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)). Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. Bapp, 802 F.2d at 604-05. Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity. Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi), 416.969a(c)(1)(vi) (2007). The applicability of the grids should be considered on a case-by-case basis. Bapp, 802 F.2d at 605. However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

The regulations provide that when a claimant's ability to perform a full range of a particular category of work is limited, or where the transferability of her work skills to other jobs are at issue, the ALJ may use the services of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e) (2007); see Bapp, 802 F.2d at 603. The vocational expert may

14

testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).  A vocational expert's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.  See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1984) (citation omitted).  The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony.  Colon, 2004 WL 1144059, at *6.  However, there must be "'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'"  Id. (quoting Dumas, 712 F.2d at 1553-54).

Here, the ALJ found that Robinson was unable to perform his past relevant work but possessed the RFC to perform a limited range of light work.[7]  T. 17.  The ALJ used a vocational expert to determine if other work existed in the national economy that Robinson

---

[7] By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (2007).

could perform. T. 180-93. The ALJ concluded that Robinson had the RFC to perform light work that did not require reading, spelling, or overhead lifting/reaching. T. 18. The ALJ then asked the vocational expert to consider an individual of Robinson's age, education, work history, and RFC. T. 184-89. The vocational expert testified that such an individual could work as a laundry folder (60,000 jobs nationally) and garment sorter (35,000 jobs nationally). T. 17-18, 187-89.

Nevertheless, Robinson contends that the ALJ failed "to acknowledge . . . [or] consider" his need for "frequent, irregular, and unpredictable breaks" and claims that his workfare supervisor allowed him to take breaks as needed. Docket. No. 6 at 7-9. For support, he points to his hearing testimony. Id. at 7. At the hearing, Robinson was asked if he took breaks while working. T. 173. He responded, "Yes, I did, for what the paperwork said to do." Id. He then added that due to his back and shoulder, he took "[t]en minute breaks every hour on the hour," which were breaks that others did not take. Id. He later reiterated that he had one ten-minute break every hour, and added that he also had a thirty-minute lunch break. Id. When asked whether he had trouble with his arm and shoulder while working, he stated that he "had to stop for a few minutes . . . [and] work out the soreness and stiffness a little bit and then go back to work." T. 174.

Contrary to Robinson's claim, the testimony suggests that Robinson took scheduled breaks in accordance with "paperwork" and not on an "as needed" basis. T. 173. While Robinson stopped working for a few minutes on what appear to be isolated occasions to "work out the soreness and stiffness" in his shoulder, he stated twice that he took regular ten-minute breaks every hour, which he described as occurring "every hour on the hour." T. 173-74. Thus, the foregoing testimony does not provide substantial evidence to support

a limitation of "frequent, irregular, and unpredictable" breaks.

Robinson also points to the March 12, 2003 progress note by Dr. Curtis in which it is noted that the DSS restricted Robinson to "sitting with frequent breaks" and that Robinson would continue working with the restrictions in place. T. 104. However, this note does not reflect that Robinson needed "irregular and unpredictable" breaks. Id. To the extent that it referenced a need for "frequent" breaks, as discussed, Dr. Curtis simply described the restrictions established by the DSS while reviewing Robinson's history, and did not render a medical opinion establishing any restrictions. See Part V.C supra. The statement noting that Robinson would continue working with the restrictions in place also was not a medical opinion establishing any restrictions. See id. Thus, the progress note does not provide substantial evidence supporting a limitation of "frequent, irregular, and unpredictable" breaks.

Robinson further points to the vocational expert, who testified on cross-examination by Robinson's counsel that no accommodation would be granted for an individual who needed to take unscheduled breaks every ten or fifteen minutes. T. 191. However, there must be substantial record evidence to support the assumption upon which the vocational expert based his opinion. Colon, 2004 WL 1144059, at *6 (quotations omitted). Here, the record does not provide substantial evidence supporting an assumption that Robinson needed unscheduled breaks every ten or fifteen minutes. Thus, the vocational expert's testimony on this point was of limited use.[8]

---

[8] To the extent that Robinson argues that the ALJ erred by failing to discuss this specific portion of the vocational expert's testimony, an ALJ is not required to reconcile every shred of evidence. See Jones v. Barnhart, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) (holding that ALJ not obligated to address specifically each

17

Based on the foregoing, the record does not provide substantial evidence to support a limitation of "frequent, irregular, and unpredictable" breaks.  Moreover, it is noted that the most recent assessment of Robinson's physical abilities, which was the March 2004 medical report for employability completed by Robinson's treating physician, Dr. Sloan, did not indicate that Robinson needed any breaks.  T. 152-53.  Therefore the ALJ properly found no such limitation.  Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

## VI.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Robinson's motion for a finding of disability (Docket No. 6) be **DENIED**, and the Commissioner's cross-motion (Docket No. 9) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL**

---

piece of evidence);  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67,79 (N.D.N.Y. 2005) (Sharpe, J.) ("[F]ailure to cite specific evidence does not indicate that it was not considered.")  Accordingly, the ALJ did not err by not discussing this specific portion of the vocational expert's testimony.

18

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:     April 12, 2007
           Albany, New York                    _____
                                               United States Magistrate Judge